UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

| | |
|---|---|
| AMERICAN FEDERATION OF LABOR AND CONGRESS OF INDUSTRIAL ORGANIZATIONS, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No. 1:06CV02009JDB |
| | ) |
| ELAINE L. CHAO, | ) ) |
| Defendant. | ) ) |

_____)

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
REPLY MEMORANDUM IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

ARGUMENT

I.  THE 2006 T-1 RULE WAS ISSUED WITHOUT REGARD TO THE
REQUIREMENTS OF THE APA.

A.  As the Government correctly observes – after having spent three quarters

of its Memorandum in Opposition doggedly ignoring that precedent – "the only

case the AFL-CIO relies upon to support its summary judgment motion on its first

cause of action [is] *Mobil Oil Corp. v. EPA*, 35 F.3d 579 (D.C. Cir. 1994)."  Mem.

Opp. 21.  We relied upon *Mobil Oil* because – as the Government's Memorandum

serves only to confirm – that D.C. Circuit precedent is directly controlling here.

1

In our opening Summary Judgment Memorandum, we described the holding of *Mobil Oil* as follows:

> "*Mobil Oil* squarely holds that, where a court has 'vacated . . . [an agency's] rule,' in order 'to repromulgate the rule, the [agency] must comply with the applicable provisions of the APA' either by 'initiat[ing] new notice and comment proceedings' or by expressly 'invok[ing]' the 'APA's good cause exception . . . on a finding "that notice and public procedure thereon are . . . unnecessary." 5 U.S.C. § 553(b)(3)(B) (1988).' 35 F.3d at 584."  SJ Mem. 8-9.

It is determinative with respect to the pending cross-motions that the Government's Memorandum in Opposition: i) does not contest this reading of *Mobil Oil*; ii) recognizes that "the D.C. Circuit vacated the provisions of the final rule relating to the 2003 Form T-1,"  Mem. Opp. 10;  and iii) admits that in promulgating the 2006 Form T-1 rule, the Secretary of Labor "dispense[d] with another round of notice and comment" and did so without "a finding of good cause in the published rule itself," Mem. Opp. 22.[1]

---

[1]  The Government's Memorandum in Opposition is, in this regard, far more candid and accurate than its Statement of Material Facts.

In the Statement of Material Facts (¶¶ 12-13) supporting our Motion for Summary Judgment, we asserted that "[t]he Secretary published the 2006 final rule without issuing a new notice of proposed rulemaking and without providing a new opportunity for comment following the vacation of the 2003 final rule" and that

The foregoing being so, it could not be more clear that, under *Mobil Oil*, the Secretary's "repromulgation of the [Form T-1 rule] was procedurally flawed." *Mobil Oil*, 35 F.3d at 584.  Because the D.C. Circuit had "vacated the original . . . [Form T-1] rule," in order "to repromulgate the rule, the [Secretary] must comply with the applicable provisions of the APA."  *Ibid.*   And, "[b]ecause the [Secretary] neither initiated a new rulemaking nor invoked the APA's good cause exception in the record," the course required by the APA in this case, as in *Mobil Oil*, is to "again vacate the [rule]."  *Id*. at 585.

B.  The Government's attempts to avoid the force of *Mobil Oil* are unsuccessful.

(1) The Government's principal strategy for dealing with *Mobil Oil* and its application to this case is to present its argument that "the Form T-1 rule is the culmination of a sound rulemaking proceeding" as if *Mobil Oil* did not exist.  Mem. Opp. 14.  According to the Government, the applicable precedents are the cases

---

"[i]n issuing the 2006 final rule, the Secretary did not invoke on the record any of the exceptions to notice and comment rulemaking contained in § 4(b) of the Administrative Procedure At, 5 U.S.C. § 553(b)."  We supported these assertions with citations to the Federal Register notice of the 2006 final rule.  *Ibid.*

The Government's Statement of Material Facts (¶ 13) flatly denies our assertions without any "references to the parts of the record relied on to support the statement," LCvR 7(h).  The Government's denial is belied both by the pages of the Federal Register we cited and by the Government's own attempt to defend the Secretary's admitted failure to engage in a new round of notice and comment proceedings and her failure to invoke any of the APA § 4(b) exceptions on the record.  Opp. 22.

holding that, "*upon remand*, an agency need not reopen or renew comment proceedings." *Id*. at 14-15 (emphasis added). But the central point of *Mobil Oil* – and of *Action on Smoking & Health v. CAB*, 713 F.2d 795 (D.C. Cir. 1983) ("*ASH*"), on which *Mobil Oil* relies – is that a remand permits "further explanation [and] other agency action" with respect to a challenged rule, *ASH*, 713 F.2d at 799, whereas vacation requires "new rulemaking in accordance with the provisions of section 4 of the Administrative Procedure Act" before the challenged rule can be reinstated, *id*. at 798. *See Fox Television Stations, Inc. v. FCC*, 280 F.3d 1027, 1052 (D.C. Cir. 2002) (noting the difference between an "order . . . to vacate the . . . Rule itself" and "merely . . . remanding the matter for further consideration by the agency"). It is precisely because vacation has such "disruptive consequences" that the choice to vacate a rule rather than remand for further proceedings turns on "the seriousness of the [rule]'s deficiencies." *Allied-Signal, Inc. v. NRC*, 988 F.2d 146, 150 (D.C. Cir. 1993), quoting *International Union, UMW v. FMSHA*, 920 F.2d 960, 967 (D.C. Cir. 1990).

In short, under *Mobil Oil* and *ASH*: i) an order vacating a final rule "ha[s] the effect of reinstating the [regulatory law] previously in force;" and ii) that reinstated regulatory law "cannot again be [changed] without new rulemaking in accordance with the provisions of section 4 of the Administrative Procedure Act." *ASH*, 713 F.2d 797-798. Applying those propositions to this case, the effect of the

D.C. Circuit's order vacating the T-1 portions of the 2003 final rule was to

reinstate the previous LMRDA reporting law, which did not include Form T-1 trust

reporting.  For the Secretary of Labor to change that reinstated law would require

"a new rulemaking in accordance with the provisions of section 4 of the

Administrative Procedure Act,"  *ASH*, 713 F.2d at 798.

(2)  Later, in the section of its Memorandum addressed to whether the

"alleged violation of the APA's notice and comment provision led to prejudicial

error," Mem. Opp. 17, the Government does finally address *Mobil Oil* and *ASH* by

making a half-hearted attempt at distinguishing those precedents, *id*. at 21.  That

attempt fails, first, because the supposedly distinguishing features relied upon by

the Government have nothing to do with the central holdings of *Mobil Oil* and *ASH*

that are directly controlling here, and second, because the cases are not different

from this one even in the irrelevant respects cited by the Government.

The Government argues that this case is different than *Mobil Oil* because

here, as opposed to what was supposedly so in that case, "the public had the

opportunity to comment on the critical factors of the rule" during the original

notice and comment proceedings on the vacated portion of the 2003 rule.  Mem.

Opp. 21.  But the agency made precisely the same argument in *Mobil Oil*, asserting

that "it was not required to reopen notice and comment proceedings [before

reinstating the vacated rule] because the comments received in response to its

[original] notice of proposed rulemaking remain fresh and relevant enough to satisfy the requirements of the APA." *Mobil Oil*, 35 F.3d at 584. The *Mobil Oil* court did not respond to that argument by treating with the question whether "the original record [wa]s still fresh" enough that "a new round of notice and comment [would] be unnecessary." *Ibid*. Instead, the court ruled that "[s]uch a finding . . . must be made by the agency and supported in the record," and since the agency "neither initiated a new rulemaking nor invoked the APA's good cause exception in the record," the proper course was to "again vacate" the rule. *Id*. at 584-585.

The Government next seeks to distinguish *ASH* on the ground that the original rule in that case had been adopted in a manner "found to be procedurally defective under the APA." Mem. Opp. 21. But that assertion is simply untrue. The original rule in *ASH* was vacated "because of CAB's failure to provide an adequate 'basis and purpose statement' to justify" the final rule at the time the rule issued and not because of some procedural defect in the notice and comment proceedings leading to the adoption of the rule. *ASH*, 713 F.2d at 797. In repromulgating a portion of the vacated rule, "CAB attempt[ed] to justify its refusal to engage in renewed notice and comment procedures by arguing that, because the court invalidated [the rule] due to its inadequate explanation of basis and purpose, further explanation, as provided in the 'new' rule, should be all that is necessary to remedy the earlier deficiency." *Id*. at 798. The *ASH* court rejected

this argument on the ground that, "[i]f one rulemaking proceeding has culminated and another has begun, then new notice and comment procedures are required." *Id*. at 800.

C.  The Government would defend the Secretary of Labor's failure to engage in a new round of notice and comment proceedings by arguing alternatively that there was "good cause" for dispensing with a new round, Mem. Opp. 22-23, or that the failure to hold a new round was not "prejudicial error," *id*. at 17-22.  Both variants of this argument rest on the assertion that "the Department has considered extensive comments on the subject at issue" during the 2002-2003 rulemaking  *Id*. at 23.  *See also id*. at 18 ("the Department considered the AFL-CIO's extensive comments").  As *Mobil Oil*  shows, neither variant has any merit.

(1)  Attempting to bring the Secretary's issuance of the 2006 final rule within the terms of the APA, the Government invokes the "APA's good cause exception in subsection 553(b)(3)(B)."  Mem. Opp. 22.  But APA §4 provides that an agency may dispense with notice and comment "when the agency for good cause finds (and *incorporates the finding and a brief statement of reasons therefore in the rules issued*) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest."  5 U.S.C. § 553(b)(3)(B) (emphasis added).  Thus, as  *Mobil Oil* states, "a finding [of good cause] . . . must be made by the agency and supported in the record."  35 F.3d at

584.  *Accord, Consumer Energy Council v. FERC*, 673 F.2d 425, 447 (D.C. Cir. 1982), *aff'd mem.*, 463 U.S. 1216 (1983) ("Section 553(b)'s 'good cause' exception requires the agency to state the reasons for finding 'good cause' in its decision.").   And, in the end, the Government essentially admits that it cannot defend the Secretary's inaction on this ground by acknowledging both that "§ 553(b)(3)(B) requires a finding of good cause *in the published rule itself*" and that the Secretary "fail[ed] to provide an express statement invoking the good cause exception."   Mem. Op. 22 & 23 (emphasis added).[2]

Indeed, the Government's "good cause" argument serves only to demonstrate that the Secretary could *not* have successfully invoked the exception in the circumstance of the 2006 rulemaking.

A long line of D.C. Circuit precedents establishes that "the 'good cause' exception is to be narrowly construed and only reluctantly countenanced."  *Utility*

---

[2]   The Government cites *Nader v. Sawhill*, 514 F.2d 1064, 1069 (Temp. Emerg. Ct. App. 1975), for the proposition that the requirement of "an express statement invoking the good cause exception" can be excused in "'calamitous' circumstances."  Opp. 22-23.  But *Nader* does not stand for that proposition.  The agency in that case *did* expressly invoke the good cause exception.  514 F.2d at 1065 at n. 1.  What was excused in *Nader* was the agency's failure to make anything more than a "conclusory statement" that there was "good cause" to dispense with "normal procedures."  *Id*. at 1068.  And, the *Nader* court stressed that, in "less calamitous circumstances, [the court expected]  . . . future decisions will take the utmost advantage of full and open public comment."  *Id*. at 1069.  In the instant case, the Secretary of Labor did *not* expressly invoke the good cause exception in even a conclusory manner.  And, the Government cannot assert that there are any calamitous circumstances excusing her failure to do so.

*Solid Waste Activities Group v. EPA*, 236 F.3d 749, 754 (D.C. Cir. 2001)

(quotation marks and citations omitted).   In particular, "the 'unnecessary' prong of

the exception . . . is confined to those situations in which the administrative rule is

a routine determination, insignificant in nature and impact, and inconsequential to

the industry and to the public."  *Id*. at 755 (quotation marks and citation omitted).

The sum and substance of the Government's argument for the propriety of

dispensing with notice and comment rulemaking here is "that an additional

comment period is unnecessary and unwarranted," because "the Department has

considered extensive comments on the subject at issue."  Mem. Opp. 23.  But even

where, unlike here, the agency has made a "good cause" finding on the record,

"[b]ald assertions that the agency does not believe comments would be useful

cannot create good cause to forgo notice and comment procedures."  *ASH*, 713

F.2d at 800.  *See Mid-Tex Elec. Co-op, Inc. v. FERC*, 822 F.2d 1123, 1133 (D.C.

Cir. 1987) ("previously-compiled record, however elaborate," does not "adequately

substitute[] . . . for a new round of public comments").

(2)  In a tacit admission that it has no valid legal defense for the Secretary's

complete disregard of the APA's notice and comment requirements in issuing the

2006 final rule, the Government's Memorandum falls back on the argument that

the "procedural claim fails because the AFL-CIO cannot establish that an alleged

violation of the APA's notice and comment provision led to prejudicial error,"

since "the Department considered the AFL-CIO's extensive comments" during the

2002-2003 rulemaking.  Mem. Opp. 17-18.  As we have noted, the Government's

"harmless error" argument is nothing more than a reworded version of its failed

attempt to invoke the "good cause" exception.  *See id*. at 23 ("the Department has

considered extensive comments on the subject at issue").  And, once again, *Mobil*

*Oil* and *ASH* block the Government's path.

     *Mobil Oil* and *ASH* stand for the proposition that an opportunity to comment

when a rule is first issued does not substitute for the opportunity to comment on

repromulgation after a court has vacated the rule.  Those cases involved the

repromulgation of rules that had previously been vacated on grounds having

nothing to do with the agencies' regulatory authority.  *Mobil Oil*, 35 F.3d at 582;

*ASH*, 713 F.2d at 797 n. 1.  In both cases, the agencies argued that a second round

of notice and comment was unnecessary because an adequate opportunity for

comment had been afforded in the initial round of notice and comment on the

original rule.  *Mobil Oil*, 35 F.3d at 584; *ASH*, 713 F.2d at 798. But in each case,

the court held that this ground for eschewing notice and comment must be asserted

by the agency itself through the "good cause" exception stated in APA § 4(b).

*Mobil Oil*, 35 F.3d at 584-585; *ASH*, 713 F.2d at 800.

     The Government seeks to make something of the fact that neither *Mobil Oil*

nor *ASH* "discuss the harmless error exception" in terms.  Mem. Opp. 21.  But it is

clear from the face of those opinions that the agencies in *Mobil Oil* and *ASH* were making a harmless error argument in substance, as the agencies had not invoked the "good cause" exception. *Mobil Oil* and *ASH* held that harmless error arguments of that sort need to be made by way of the "good cause" exception in APA § 4. The logic of this ruling is obvious. Were an agency permitted to dispense with notice and comment without making the finding of "good cause" required by APA § 4(b) and then later defend that course as "harmless error," there would be nothing left of the requirement that the agency "incorporate[] the finding [of good cause] and a brief statement of reasons therefore in the rules issued." 5 U.S.C. § 553(b)(3)(B).

Even if we leave that dispositive point aside, the Government's argument fails to meet the standard for showing "harmless error."

The D.C. Circuit has made it plain that "an utter failure to comply with notice and comment cannot be considered harmless if there is any uncertainty at all as to the effect of that failure." *Sugar Cane Growers Co-op of Fla. v. Veneman*, 289 F.3d 89, 96 (D.C. Cir. 2002). *Accord, Sprint Corp. v. FCC*, 315 F.3d 369, 376 (D.C. Cir. 2003); *McLouth Steel Prods. Corp. v. Thomas*, 838 F.2d 1317, 1324 (D.C. Cir. 1988). The only situation in which there is no "uncertainty at all as to the effect" of denying notice and comment is where the agency's choice is so constrained that the outcome is foreordained.

The cases relied upon by the government apply this strict "harmless error" standard.  *See* Mem. Opp. 17-18.  Thus, in *Sheppard v. Sullivan*, 906 F.2d 756, 762 (D.C. Cir. 1990), the court first observed, "we believe the agency's approach to have been the only reasonable one," and then concluded, "[t]he absence of any real argument [against that approach], coupled with the logically related likelihood that we would reverse the [agency] if it came out the other way, makes the absence of prejudice plain enough to find harmless any [agency] error in not providing notice and comment."  And, in *Steel Manufacturers Ass'n v. EPA*, 27 F.3d 642, 649 (D.C. Cir. 1994), the court found that, "because EPA had adequate and independent grounds for setting the zinc standard, *see supra*, its failure to allow comments on the 'aquatic toxin' rationale can be excused under the APA's 'harmless error' rule, 5 U.S.C. § 706." [3]

Denial of notice and comment cannot be "harmless error" where the agency has any discretion as to its course of action, precisely because that procedure is

---

[3]    *First American Discount Corp. v. Commodity Futures Trading Commission*, 222 F.3d 1008 (D.C. Cir. 2000), the principal authority relied upon by the Government in making its harmless error argument, has no application here. In *First American Discount*,  it was "the portion of the rule to which First American object[ed]" that was harmless to the petitioner, *not* the absence of notice and comment rulemaking itself.  *Id.* at 1015-16.  *But see id.* at 1018 (Randolph, J., declining to concur in the "holding that the Commission's failure to give notice amounted to harmless error").  The Government admits that the Form T-1 rule imposes substantial reporting burdens on both unions and the trusts in which they are interested.  Def. Statement of Mat. Facts ¶ 7 (admitting Pltff. Statement of Mat. Facts ¶ 9).

designed to exert influence on the agency's policy choices.  The APA "require[s]
agencies to set out their thinking in notices of proposed rulemaking" in order to
"allow[] adversarial critique . . . of what the agency thinks it knows."  *Home Box
Office, Inc. v. FCC*, 567 F.2d 9, 55 (D.C. Cir. 1977).  In issuing a final rule, the
agency is "obliged to set forth a statement of the basis and purpose of the rule,
which needs to take account of the major comments – and often is a major focus of
judicial review."  *Sugar Cane Growers*, 289 F.3d at 96-97.  Thus, "[i]n the real
world of the APA, an opportunity for comment" on a proposed rule is "in itself
something of value."  *Environmental Def. Fund, Inc. v. Reilly*, 1 F.3d 1254, 1257
(D.C. Cir. 1993).

        The Government does not contend that the outcome of the 2006 Form T-1
rulemaking was foreordained.  Indeed, the Government asserts that the Secretary
had "considerable subjective discretion" in revising the Form T-1 reporting
requirements following the D.C. Circuit's decision.  Mem. Opp. 20.  *See id*. at 11
n. 5.  That being so, the Government cannot possibly establish that there is no
"uncertainty at all as to the effect" of the Secretary's failure to provide notice and
comment on the 2006 issuance of a revised Form T-1 rule.  *Sugar Cane Growers*,
289 F.3d at 96.

        Ignoring altogether the legal standard for "harmless error," the Government
faults us for supposedly failing to "indicate . . . what comments, if any, [the AFL-

CIO] lacked opportunity to submit for the Department's consideration." Mem. Opp. 18. In the first place, it was *not* our burden to "indicate[] additional considerations [we] would have raised in a comment procedure." *Sugar Cane Growers*, 289 F.3d at 97. The D.C. Circuit precedents hold that "imposition of such a burden on the challenger is normally inappropriate where the agency has completely failed to comply with § 553." *McLouth Steel*, 838 F.2d at 1324.

In the second place, although it was not our burden to do so, our opening Memorandum did explain what we would have commented on regarding the 2006 Form T-1 rule: whether employer contributions to a trust can be equated to union contributions and whether that equation can be squared with the Secretary's representation that it is in fact the case that "the scope of the reporting requirement has been narrowed" from the 2003 final rule to reach only situations in which there is union "management control [or] financial domination" over the trust. 71 Fed. Reg. 57716, 57720 & 57724 (Sept. 29, 2006). *See* SJ Mem. 13-14. In particular, we complained of the apparent, unexplained discrepancy between the Secretary's stated goals in modifying the trust reporting requirement and the Form T-1 instructions providing that "contributions by an employer on behalf of the union's members as required by a collective bargaining agreement are considered to be contributions of the union as are any contributions otherwise made on the union's behalf." 71 Fed. Reg. at 57716. *See* SJ Mem. 14-15.

14

In response to our Summary Judgment Motion, the Government has attempted a *post hoc* explanation of how employer contributions to a trust give a union "management control [or] financial domination" over the trust. Mem. Opp.26. That *post hoc* explanation rests on the premise that unions control employer contributions through the collective bargaining process. Had the Secretary offered that explanation in a notice of proposed rulemaking, it certainly would have generated comments from labor unions, as well as from employers and trusts. Whether unions do in fact control employer trust contributions through the collective bargaining process and whether this supposed control over employer contributions translates into union "financial domination" over the trusts are empirical questions. The Government does not assert that the Secretary has received or considered any comments addressed to these empirical questions. Presumably the Secretary's views on these matters are open to influence by comments from knowledgeable parties. That being so, there is "uncertainty . . . as to the effect" of the Secretary's failure to engage in notice and comment in issuing the 2006 final rule. *Sugar Cane Growers*, 289 F.3d at 96.

## II. THE SECRETARY HAS NOT OFFERED ANY EXPLANATION FOR TREATING EMPLOYER CONTRIBUTIONS TO A TRUST AS UNION CONTRIBUTIONS.

Our second claim is that in issuing the 2006 final rule the Secretary violated the APA's "satisfactory explanation" requirement by failing to offer any

explanation of how the equation of employer contributions and union contributions contained in the Form T-1 instructions squares with her stated purpose of "narrow[ing]" the "scope of the reporting requirement" by "rel[ying] on principles of management control and financial domination." 71 Fed. Reg. at 57720 & 57724. It is plain that the effect of the instructions is to all but negate the supposedly "narrow[ing]" effect of the 2006 revisions. And, it is equally plain that whether employer trust fund contributions do in fact serve as a vehicle for union control or financial domination of a trust, in the same way direct union contributions would, is an empirical question that is open to dispute. That being so, the fact that the section of the Federal Register notice devoted to explaining "The Rationale Underlying the Rule" does not even allude to the equation of employer contributions and union contributions contained in the Form T-1 instructions – much less provide any basis for that equation or address the apparent inconsistency of that equation with the stated purposes of the 2006 revisions – leaves a gaping hole in the Secretary's explanation of the 2006 final rule. *See* 71 Fed. Reg. at 57719-27.

The Government's principal response is to assert that "the AFL-CIO raised the same complaint" in *AFL-CIO v. Chao* and that "[t]he D.C. Circuit rejected this argument." Mem. Opp. 24-25. But given the sequence of events that obviously cannot be so.

16

In setting the 2003 final rule's criteria for trust reporting, "[t]he Department rejected other proposals . . . that a union exercise significant ownership or control to trigger the [trust] reporting requirement."  Mem. Opp. 9.  The D.C. Circuit held, however, that the Form T-1 provisions of the 2003 final rule exceeded the Secretary's statutory authority precisely because that rule's broad trust reporting requirement "reache[d] trusts in which a union has neither management control nor financial domination."  *AFL-CIO v. Chao*, 409 F.3d 377, 391 (D.C. Cir. 2005). Thus, it was the D.C. Circuit's 2005 decision that prompted the Secretary in issuing the 2006 final rule to "rel[y] on principles of management control and financial domination," 71 Fed. Reg. at 57724, in order to "narrow[]" the "scope of the reporting requirement," *id*. at 57720.  The questions of whether the Secretary had in the 2006 final rule properly applied those principles to narrow the reporting requirement and whether the Secretary had adequately explained her application of those principles to that end, thus, could not possibly have come before the D.C. Circuit.[4]

---

[4]  In this regard, the Government (Mem. Opp. 25-26) repeatedly cites the D.C. Circuit's statement that "employee benefit plans funded by employer rather than union contributions" are not, as such, "beyond the reach of section 208." 409 F.3d at 387.  But that part of the Court of Appeals' opinion addresses only the question of whether such plans are categorically beyond the Secretary's LMRDA § 208 authority to prevent circumvention or evasion of the LMRDA Title II reporting requirements by requiring trust reporting.  The Court of Appeals had no occasion to address, and did not address, the separate question, relevant here, whether as an empirical matter all or any such trusts are actually subject to union

Beyond that, the Government's Memorandum in Opposition confirms that an explanation for equating employer contributions and union contributions cannot be drawn from the Secretary's Federal Register notice.  When it comes to articulating what the Government believes to be a "satisfactory explanation" of this aspect of the 2006 Form T-1 final rule in terms of "the principles of management control and financial domination" cited by the Secretary, the Memorandum in Opposition relies on a *post hoc* explanation made up entirely by Government counsel without even a feigned reliance on the Secretary's published statement of the rule's rationale.  Mem. Opp. 26-27.  The explanation made up by Government counsel – that "the union plays an indispensable role in directing assets into the trust accounts" by "us[ing] its bargaining power to obligate the employer to direct funds into the trust's accounts," Mem. Opp. 26 – appears nowhere in the Secretary's statement of "The Rationale Underlying the Rule," as the absence of any citation to the Federal Register from this part of the Government's Memorandum in Opposition confirms.

---

"managerial control [or] financial domination."  That question was left for the Secretary to address, should she decided to do so, after due consideration in a proper APA rulemaking.

CONCLUSION

The plaintiff's motion for summary judgment should be granted and the 2006 Form T-1 rule should be vacated.  The defendant's motion for summary judgment should be denied.

Respectfully submitted,


_____s/_____
JONATHAN P. HIATT
(D.C. Bar # 427856)
DEBORAH GREENFIELD
(D.C. Bar #  358317)
JAMES B. COPPESS
(D.C. Bar # 347427)
815 Sixteenth Street, NW
Washington, DC  20006
202-637-5397


_____s/_____
LEON DAYAN
(D.C. Bar # 444144)
Bredhoff & Kaiser, P.L.L.C.
805 Fifteenth Street, NW
Suite 1000
Washington, DC 20005
(202) 842-2600

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

AMERICAN FEDERATION OF LABOR  )
AND CONGRESS OF INDUSTRIAL        )
ORGANIZATIONS,                              )
                                                         )
                              Plaintiff,           )
                                                         )
v.                                                        )  Civil Action No. 1:06CV02009JDB
                                                         )
ELAINE L. CHAO,                             )
                                                         )
                              Defendant.        )
_____)

PLAINTIFF'S REPONSE TO THE DEFENDANT'S
STATEMENT OF MATERIAL FACTS

Plaintiff American Federation of Labor and Congress of Industrial

Organizations responds to the Statement of Material Facts submitted in support of

the Defendant's Motion for Summary Judgment as follows.

1.  Paragraph 5 of the Defendant's Statement of Material Facts asserts that

"significant comments about trusts funded by employer contributions" were

submitted by various organizations identified in that paragraph.  Plaintiff denies

this assertion.  None of the identified organizational comments concern "trusts

funded by employer contributions" as such.  Rather, those comments merely

address the 2002 Form T-1 proposal generally without any attention to the issue of

"employer contributions."  In particular, those comments do not even touch upon

1

whether employer contributions are properly equated with union contributions in assessing whether a union exercises sufficient control over a trust to use the trust as a vehicle for circumventing the union's own financial reporting obligations.

    2.  Paragraph 13 of the Defendant's Statement of Material Facts asserts that "the public had once recently been given the opportunity to comment on the substance of the 2006 rule."  Plaintiff denies this assertion.  The public was not given the opportunity to comment on the 2006 Form T-1 final rule. 71 Fed. Reg. 57716, 57717 (Sept. 29, 2006); Def. Mem. Opp. 22.  The remainder of paragraph 13 contains argumentative points which Plaintiff also denies.

    3.  Paragraphs 11 and 12 of the Defendant's Statement of Material Facts deny statements made in paragraphs 15, 16 and 18 of the Plaintiff's Statement of Material Facts.  However, the Defendant's explanations for these denials are not responsive to the statements made by the Plaintiff.

    4.  Paragraph 13 of the Defendant's Statement of Material Facts denies statements made in paragraphs 12 and 13 of the Plaintiff's Statement of Material Facts.  However, the Defendant's denials are not supported by references to the record.  LCvR 7(h).  Moreover, the Defendant's denials are contradicted by the admission on page 22 of the Defendant's Memorandum in Opposition that the Secretary neither engaged in "another round of notice and comment" following the

vacation of the Form T-1 portions of the 2003 final rule nor made "a finding of good cause [for not doing so] in the published rule itself."

5.  The remaining paragraphs of the Defendant's Statement of Material Facts are admitted.


Respectfully submitted,


_____s/_____
JONATHAN P. HIATT
(D.C. Bar # 427856)
DEBORAH GREENFIELD
(D.C. Bar #  358317)
JAMES B. COPPESS
(D.C. Bar # 347427)
815 Sixteenth Street, NW
Washington, DC  20006
202-637-5397


_____s/_____
LEON DAYAN
(D.C. Bar # 444144)
Bredhoff & Kaiser, P.L.L.C.
805 Fifteenth Street, NW
Suite 1000
Washington, DC 20005
(202) 842-2600

*Attorneys for Plaintiff*