UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                            )
AMERICAN FEDERATION OF LABOR AND            )
CONGRESS OF INDUSTRIAL                      )
ORGANIZATIONS,                              )
                                            )
        Plaintiff,                          )
                                            )   No. 1:06CV02009 (JDB)
                                            )
        v.                                  )
                                            )
                                            )
ELAINE L. CHAO, UNITED STATES               )
SECRETARY OF LABOR,                         )
200 CONSTITUTION AVE., NW                   )
WASHINGTON, D.C. 20210,                     )
                                            )
        Defendant.                          )
_____)

**REPLY IN SUPPORT OF DEFENDANT'S
CROSS-MOTION FOR SUMMARY JUDGMENT**

Rather than tackle the unique circumstances leading to the issuance of the 2006 Form T-1 rule, plaintiff oversimplifies the issues presented in this case. Because the law and undisputed facts establish that the Form T-1 reporting requirements are procedurally and substantively sound, summary judgment should be granted in favor of the Department of Labor.

First, plaintiff contends that Mobil Oil and ASH are dispositive cases, highlighting the supposed distinction between vacation and remand of a rule. Neither case, however, establishes the rigidly inflexible dichotomy of vacated rules vs. remand that plaintiff suggests. (See Opp'n Mem. at 3-4.) Although plaintiff acknowledges that the APA's notice and comment provisions are motivated to "allow adversarial critique . . . of what the agency thinks it knows," plaintiff refuses to acknowledge that the Department provided an extended period of adversarial critique beginning in 2002. (Opp'n Mem. at 13.) As established in the opening cross-motion, it is

1

undisputed that the Department provided notice of a proposed regulation enacting Form T-1 reporting requirements in 2002. It is also undisputed that plaintiff provided extensive comments in response to the Department's notice. The Department's 2006 Form T-1 rule is a "logical outgrowth" of the 2002 proposal, refined only after an extended period of adversarial critique. Accordingly, the Department provided all the "notice and comment" opportunity that the APA requires.

Plaintiff also disregards the APA's harmless error analysis by contending that both Mobil Oil and Action on Smoking & Health ("ASH") require harmless error arguments to be made "by way of the 'good cause' exception in APA § 4." (Opp'n Mem. at 11.) Neither Mobil Oil nor ASH so hold. Indeed, courts have routinely considered and adopted harmless error arguments in the context of notice and comment challenges, without requiring invocations of the "good cause" exception. Moreover, plaintiff asserts that it has been prejudicially harmed by the issuance of the Form T-1 rule because it did not offer comments on one provision of the rule — a provision it had the opportunity to comment upon in substance back in 2002. In fact, as shown in the record, other members of the public did volunteer comments directed to the provision at issue. Plaintiff's voluntary silence in response to the Department's notice is not the type of prejudicial error countenanced by the APA.

Finally, plaintiff's substantive criticism of the "employer contribution" provision of the rule falters under the "extremely narrow" standard of review used to judge whether the rule is reasonable. Rather than address the substance of the D.C. Circuit's opinion approving in essence the scope of the 2006 Form T-1 rule, plaintiff challenges the "timing" of the rule. Plaintiff's principal objection to the D.C. Circuit's approval of regulating employer contributions is that the D.C. Circuit's opinion was issued in 2005, before the Department promulgated the final 2006 rule. The D.C. Circuit's opinion, however, establishes that the Department possesses the

statutory authority to require a labor organization to report on the finances of a trust in which it has an interest, as provided by 29 U.S.C. § 402(l), where contributions are made to the trust by an employer pursuant to a collective bargaining agreement. See AFL-CIO v. Chao, 409 F.3d 377, 387 (D.C. Cir. 2005). That is the very authority that provided the foundation for the challenged provision of the Department's proposed rule. The court's pronouncement, coupled with plaintiff's explicit knowledge that the Department's proposal included such trusts, defeats plaintiff's second cause of action.

## I. THE DEPARTMENT PROVIDED THE NOTICE AND OPPORTUNITY FOR ADVERSARIAL CRITIQUE REQUIRED BY THE APA

Plaintiff's procedural claim fails. First, plaintiff acknowledges that the APA's notice and comment provisions are motivated to "allow adversarial critique . . . of what the agency thinks it knows," but fails to concede that the Department provided an extended period of adversarial critique beginning in 2002. (Opp'n Mem. at 13.) As established in the opening cross-motion, it is undisputed that the Department provided notice of a proposed regulation enacting Form T-1 reporting requirements in 2002. (Def's Cross-Mot. Mem. at 14-17.) The Department's 2006 Form T-1 rule is a "logical outgrowth" of the 2002 proposal, and plaintiff never challenges this fact. It follows that the Department provided the opportunity for adversarial critique required by the APA.

Second, in wrestling with the impact of the 2002 comment period, plaintiff proffers an overly rigid and simplistic interpretation of Mobil Oil and ASH to create a binary scheme of either vacated rules or remanded proceedings. Plaintiff thus summarizes its theory:

> [T]he central point of Mobil Oil and of Action on Smoking & Health . . . is that a remand permits "further explanation [and] other agency action" with respect to a challenged rule, whereas vacation requires "new rulemaking in accordance with the provisions of section 4 of the Administrative Procedure Act" before the challenged rule can be reinstated.

3

(Opp'n Mem. at 4.) Its argument continues: remand permits further proceedings; vacated rules do not. Plaintiff fails to explain, however, the significant number of cases that vacate rules but nonetheless remand to the agency for further rulemaking proceedings if necessary. See, e.g., Environ. Integrity Proj. v. EPA, 425 F.3d 992 (D.C. Cir. 2005) (vacating final rule because it was not a logical outgrowth of the agency's proposed interim rule and remanding to agency for further proceedings); Int'l Union, United Mine Workers of Am. v. Mine Safety & Health Admin, 407 F.3d 1250 (D.C. Cir. 2005) (same); Sprint Corp. v. FCC, 315 F.3d 369, 376 (D.C. Cir. 2003) (same).

By failing to appreciate why the courts in Mobil Oil and ASH came to the conclusions they did, plaintiff blindly follows the language of the cases without applying the underlying rationale. As demonstrated further below (see discussion infra regarding prejudicial error) both Mobil Oil and ASH are consistent with the Department's actions here. The unique circumstances of this case establish that the 2006 Form T-1 rule is procedurally sound. Where the public has been notified once of a rule and afforded the opportunity to comment and where the D.C. Circuit has blessed the fundamental approach adopted by the Department, the Department has fulfilled its procedural burdens under the APA.

## II. PLAINTIFF IS NOT PREJUDICED BY ANY PERCEIVED NOTICE AND COMMENT DEFICIENCY

### A. Harmless Error Precludes Relief Even if the Good Cause Exception is not Invoked or Established

The Department also merits summary judgment on the first cause of action because plaintiff cannot establish prejudicial harm. Significantly, plaintiff does not challenge established precedent that the "harmless error rule requires the party asserting error to demonstrate prejudice from the error." First Am. Discount Corp. v. Commodity Futures Trading Comm'n, 222 F.3d 1008, 1015 (D.C. Cir. 2000). Nor could it. Instead, plaintiff claims that the harmless error rule

is actually subsumed by, and equivalent to, the "good cause exception" under 5 U.S.C. § 553(b)(3)(B).  (Opp'n Mem. at 11 ("Mobil Oil and ASH held that harmless error arguments [for notice and comment challenges] need to be made by way of the 'good cause' exception in APA § 4.").)  Plaintiff asserts that the Department is foreclosed from raising harmless error because the Department failed to summon or establish the "good cause" exception when issuing the 2006 Form T-1 rule.  Plaintiff thus argues that harmless error is established under plaintiff's theory only if the "good cause exception" is invoked and justified.

Plaintiff's theory has no basis in the rationale or holdings of Mobil Oil and ASH.  Nowhere does Mobil Oil or ASH contain the sweeping theory of equation — that harmless error and the good cause exception are manifestations of the same principle — that plaintiff advances.  Neither Mobil Oil nor ASH addresses harmless error at all.  (See also Def's Cross-Mot. Mem. at 21.)

Courts addressing similar arguments have rejected the assertion that harmless error must be raised through the good cause exception in notice and comment challenges.  See, e.g., Conservation Law Foundation v. Evans, 360 F.3d 21, 29-30 (1st Cir. 2004).  In fact, courts have excused agencies for alleged notice and comment defects by finding the defects harmless, even when the good cause exception was not invoked or established.  See id.  In Conservation Law Foundation, for instance, the court in considering a challenge to a Department of Commerce rule, specifically distinguished cases analyzing the "good cause" exception from cases examining harmless error.  In rejecting the appellant's § 553(b)(3)(B) "good cause" challenge, the court stated that "[e]ven if we were to agree with the plaintiffs on this point, . . . any error on [the agency's] part was harmless."  Id. at 29.  Significantly, the court rejected the appellant's reliance on a case examining only the good cause exception because "neither party briefed the issue of harmless error" in that case, in contrast to the matter pending before the court.  Id. at 30 n.14

5

(distinguishing NRDC v. Evans, 316 F.3d 904, 912 (9th Cir. 2003) (good cause exception only examined)). The court in NRDC had "interpreted th[e] silence" and failure to raise a harmless error defense "as an admission by [the agency] that some prejudice resulted." Id. In contrast, the Conservation Law Foundation court found that the Department of Commerce "had not made a comparable admission," making it appropriate for the court to consider the agency's harmless error defense. Id.

Contrary to plaintiff's assertion, Mobil Oil and ASH do not prevent entry of summary judgment for the Department of Labor.[1] (Opp'n Mem. at 10.) While the silence of the agencies in Mobil Oil and ASH regarding harmless error could there be considered "an admission that some prejudice resulted," the Department has offered no "comparable admission" here. Conservation Law Foundation, 360 F.3d at 30 n.14. It is entirely appropriate — indeed required under the terms of § 706 — that this court examine whether plaintiff suffered any prejudice from alleged defects in the rulemaking process. As established in the opening cross-motion and further below, any defect in process was harmless and plaintiff is not entitled to any relief. (See Def's Cross-Mot. Mem. at 17-21.)

Plaintiff's theory that harmless error and the good cause exception are manifestations of the same principle impermissibly reads out a statutory provision of the APA for notice and comment challenges: the harmless error analysis required under § 706. See, e.g., Duncan v. Walker, 533 U.S. 167, 174 (2001) (stating that courts have "duty to give effect, if possible, to

---

1   Under plaintiff's theory of prejudicial error, courts like that in Conservation Law Foundation could not have determined that a procedural defect was harmless if the agency failed to invoke and establish the propriety of the good cause exception. Of course, the court in Conservation Law Foundation did conduct a harmless error analysis and did find that the agency's rulemaking process caused no harm — even though the court did not reach the issue of whether the good cause exception had been established. See id. at 29-30. Plaintiff's theory of equation is simply wrong.

6

every clause and word of a statute" and must be "reluctant to treat statutory terms as surplusage"). Yet, ironically, plaintiff complains that permitting harmless error defenses to notice-and-comment attacks would eviscerate the good cause exception. (See Opp'n Mem. at 11 (predicting that allowing such harmless error defenses "would [leave] nothing left of the [good cause exception] requirement").) ASH, however, shows why plaintiff's predictions are misguided and why ASH and Mobil Oil are distinguishable from the case at bar.

In ASH, the court faulted the agency for failing to initiate a second round of notice and comment when the agency reissued a rule that was previously vacated for omitting a general statement of basis and purpose. See ASH, 713 F.2d at 799. In doing so, the court stressed the rule that "post hoc rationalizations [of a regulation] are unacceptable substitutions for a contemporaneous basis and purpose statement." Id. The agency in ASH was thus cabined by the nature of the error in the predecessor rule (the absence of the agency's rationale for the rule): to reissue the rule without a new comment period would violate the contemporaneous statement rule and per se impose harm. Accordingly, the agency was restricted in ASH either to initiate new rulemaking proceedings or establish good cause not to do so.[2] Thus, ASH cannot properly be read to suggest that the absence of a finding of good cause in an agency's rule bars the agency from relying on the APA's "harmless error" defense in a challenge to its rule.

Here, there is no deficiency infecting the preceding 2003 Form T-1 rule comparable to the procedural defect in ASH or a rule of per se harm like the contemporaneous statement rule at play in ASH that prohibits reliance on the earlier-compiled notice and comment record. As

---

2   The court in Mobil Oil simply adopted the conclusion in ASH, without examining the limitations that constrained the agency in ASH to either initiate new rulemaking or invoke the good cause exception. Regardless, the court in Mobil Oil never addressed harmless error.

Conservation Law Foundation and section 706 dictate — and given the absence of any per se harm rules limiting the Department's actions — no legal bar exists to the harmless error defense.

**B. Plaintiff's Opposition Does Not Establish Prejudice and the Record Reflects that Plaintiff Suffered No Harm**

Understanding that Mobil Oil and ASH are not "dispositive" because the cases did not address harmless error, plaintiff next (1) proposes that a "strict" harmless error standard is applicable here and (2) identifies what general comment it would have offered in 2006 that supposedly establishes harm. (Opp'n Mem. at 11-15.) Neither approach establishes prejudice or defeats the Department of Labor's motion for summary judgment.

**1. A Stricter Harmless Error Standard does not Apply**

First, as described in the opening cross-motion, "cases like Sugar Cane of Florida v. Veneman, 289 F.3d 89, 96-97 (D.C. Cir. 2002) and McLouth Steel Prods. Corp. v. Thomas, 838 F.2d 1317, 1324 (D.C. Cir. 1988) are distinguishable" because the 2006 Form T-1 rule was not issued after an "utter failure" to comply with notice and comment. (Def's Cross-Mot. Mem. at 19 n.8.) In such cases, courts expressed worry that

> [I]f the government could skip those procedures, engage in informal consultation, and then be protected from judicial review unless a petitioner could show a new argument — not presented informally — section 553 obviously would be eviscerated. The government could avoid the necessity of publishing a notice of a proposed rule and perhaps, most importantly, would not be obliged to set forth a statement of the basis and purpose of the rule, which needs to take account of the major comments — and often is a major focus of judicial review.

Sugar Cane, 289 F.3d at 96-97. Thus, those courts were motivated by the concern that rules issued without any opportunity for public comment and without any meaningful input from the public would lead to the issuance of unreasoned and unsupported regulations. In those circumstances, courts suggested that imposing a burden on a challenger to show error would "normally" — though not in all circumstances — be inappropriate. McLouth, 838 F.2d at 1324.

8

Examining the underlying logic of the "utter failure" cases shows that this case is different. The concerns articulated in those cases — to ensure an adequate basis for judicial review and provide an opportunity for the public to weigh in on proposed rules — are not present where, as here, 1) a proposed rule is published in the Federal Register; 2) comments are solicited for 90 days; 3) a rule is issued and vacated in accordance with more narrow principles of statutory authority; and 4) a final rule is published considering all of the comments, but simply conforming to the D.C. Circuit's limitations, as the 2006 Form T-1 rule here. At base, this is not the type of "utter failure" case addressed by the courts in McLouth or Sugar Cane: in each of those cases, neither agency formally solicited any comments nor provided any notice of the scope of the proposed rule. Only by ignoring the 2002 notice and comment proceedings may plaintiff shoehorn this case into the "utter failure" line of precedent and shirk its obligation to establish harm.

Plaintiff further claims that the "D.C. Circuit has made it plain 'that an utter failure to comply with notice and comment cannot be considered harmless if there is any uncertainty at all as to the effect of that failure.'" (Id.) But by the terms of the quoted excerpt, the "uncertainty at all" standard is relevant if there has been "an utter failure to comply with notice and comment," not when the public has been afforded an opportunity to comment as here. That makes sense. Nothing can substitute for public notice and comment if it has never been offered, absent good cause or other justifications under the APA. But where, as here, the public has had an opportunity to comment, there is no substitution necessary. The public had notice of the scope of the rule and an opportunity to comment. So long as the final rule is a logical outgrowth of the proposed rule, notice and comment under the APA is satisfied. (See Def's Cross-Mot. Mem. at 15-16 (showing that 2006 Form T-1 rule is logical outgrowth of 2002 proposal).)

Regardless, establishing harmless error is not limited to "where the agency's choice is so constrained that the outcome is foreordained" or where the agency has no "discretion as to its course of action" as plaintiff contends. (Opp'n Mem. at 11, 12.) Indeed, one need not look any further than plaintiff's own citation to <u>Steel Manufacturers Association v. EPA</u>, 27 F.3d 642 (D.C. Cir. 1994), to understand that agency discretion is not fatal to a harmless error defense. As plaintiff acknowledges "the court found that because the EPA had adequate and independent grounds for setting the zinc standard, its failure to allow comments on the 'aquatic toxin' rationale can be excused under the APA's 'harmless error rule.'" (Opp'n Mem. at 12.) <u>Steel Manufacturers Association</u> thus did not require the absence of agency discretion or a foreordained conclusion to conclude that error was harmless. Rather, <u>Steel Manufacturers</u> involved the straightforward application of the prejudicial error rule: because plaintiff could not establish prejudice, it could not defeat a harmless error defense. The "aquatic toxin" rationale was justified by other, "adequate and independent grounds." As described fully in the opening cross-motion, the Form T-1 rule is similarly justified by "adequate and independent grounds" since it was the result of notice and comment and its contours approved in substantial measure by the D.C. Circuit. Plaintiff cannot claim prejudice.

### 2. Plaintiff's Proposed Comments Do Not Establish Prejudice

Finally, plaintiff's substantive prejudicial harm argument fares no better than its other assertions. Plaintiff offers little more than a statement that it would have offered comments and empirics on the general question of whether employer contributions to a trust can be equated to union contributions. (Opp'n Mem. at 14-15.) Plaintiff fails to specify, however, what "empirical" evidence or comment it could offer in favor of or in opposition to the provision of the rule. Indeed, plaintiff does not even make clear whether it is in substantive agreement or disagreement with the rule. While a person challenging harm need not show that its comments

10

would have succeeded in changing the Department's rule, it must certainly identify some substantive comment it would offer to establish prejudice. (See id. (stating only generically that notice of the 2006 Form T-1 rule would "have generated comments from labor unions, as well as from employers and trusts" on the "empirical questions" of whether employer trust contributions may be considered union contributions).)

But importantly, as established in the opening brief, plaintiff had the opportunity to offer comments in the 2002 proceeding directed at the issue plaintiff challenges now. (Def's Cross-Mot. Mem. at 18-19.) In the 2002 notice of proposed rulemaking, the Department identified that employer contributions pursuant to a collective bargaining agreement would trigger reporting requirements and public members did comment. For example, the Department stated:

- "Union members have a similar interest in obtaining information about funds provided for the benefit of members **by employers pursuant to collective bargaining agreements**, even if those funds are provided to a separate, jointly administered account rather than directly to the union. Since the money an employer contributes to such a 'trust' for union members' benefit might otherwise have been paid directly to workers in the form of increased wages and benefits, the members on whose behalf the financial transaction was negotiated have a right to know what funds were contributed, how the money is managed and how it is being spent." 2002 NPRM, 67 Fed. Reg. 79280, 79282-83 (2002) (emphasis added).
- "Every labor organization shall . . . file a report on form T-1 for every trust in which a labor organization is interested, . . . that has gross annual receipts of $200,000 or more, and to which $10,000 or more was contributed during the reporting period by the labor organization or **on the labor organization's behalf or as a result of a negotiated agreement to which the labor organization is a party**." Id. at 79298 (emphasis added).
- "[I]f the union's financial contribution to a trust, **or the contribution made on the labor organization's behalf, or as a result of a negotiated agreement to which the union is a party**, was $10,000 or more annually, . . . the union must file Form T-1." Id. at Instructions for Form T-1 at 1 (emphasis added).

In response, some commenters chose to address the employer contributions reporting requirement. For instance, the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada, AFL-CIO objected that

11

"contributions made by an employer to a trust fund established pursuant to a collective bargaining agreement are not part of the union's finances subject to reporting." Docket No. 15221 at 34. While plaintiff may now be dissatisfied with its detailed 14-page response to the proposed T-1 reporting requirements, its self-imposed dissatisfaction does not establish prejudice. Cf. Hormel v. Helvering, 312 U.S. 552, 556 (1941) ("[T]he basic reasons which support this general principle applicable to trial courts make it equally desirable that parties could have an opportunity to offer evidence on the general issues involved in the less formal proceedings before administrative agencies entrusted with the responsibility of fact findings."); Nat'l Wildlife Fed. v. EPA, 286 F.3d 554, 562 (D.C. Cir. 2002) ("It is well established that issues not raised in comments before the agency are waived and this Court will not consider them.").

### III. THE SECRETARY ADEQUATELY EXPLAINED AND SUPPORTED THE EMPLOYER CONTRIBUTION PROVISION OF THE RULE

In opposing the Department's cross-motion on the second cause of action, plaintiff first relies on an erroneous "arbitrary and capricious standard." Plaintiff complains that "it is equally plain that whether employer trust fund contributions do in fact serve as a vehicle for union control or financial domination of a trust . . . is an empirical question that is open to dispute." (Opp'n Mem. at 16 (emphasis added).) In arguing empirics, plaintiff forgets not only that it had the opportunity in commenting on the NPRM to address this point, but also that the Department need only provide "minimal standards of rationality" to withstand arbitrary and capricious attack. Nat'l Home Equity Mortgage Ass'n v. Office of Thrift Supervision, 271 F. Supp. 2d 264, 269 (D.D.C. 2003). Notably, plaintiff simply ignores the evidence from the rulemaking record provided in the Department's opening motion that amply demonstrates a rational basis for the rule.

Moreover, plaintiff challenges the Department's reliance on <u>AFL-CIO v. Chao</u> by clarifying at length the rather unremarkable proposition that the D.C. Circuit's opinion in 2005 predated the 2006 issuance of the Form T-1 rule. The Department never suggested that the court somehow reached in 2005 an issue raised in 2006 in another forum. Rather, the Department relied on the D.C. Circuit's opinion to show — as plaintiff concedes — that the Department maintains the statutory authority to regulate "employee benefit plans funded by employer rather than union contributions." (Opp'n Mem. at 17 n.4.) As the D.C. Circuit explained, that authority stems from the power to prevent the "circumvention or evasion" of reporting requirements, as provided by 29 U.S.C. § 438. In 2002, the Department proposed that employer contributions pursuant to a collective bargaining plan be counted for the purposes of the Form T-1 reporting requirement. In 2005, the D.C. Circuit confirmed that those contributions fell under the regulatory power of the Department after examining the evidence the Department offered. In 2006, the Department simply maintained that scope of the Form T-1 rule, while narrowing other provisions in accordance with the D.C. Circuit's opinion. When the Department narrowed the rule, nothing prohibited the Department from reaching the same employer contributions blessed in 2005.

Plaintiff suggests that the test of "management control or financial domination" somehow limits the Department's power to reach employer contributions, even though the "circumvention or evasion" test permits the Department's regulation under the reasoning of the D.C. Circuit's opinion. In so doing, plaintiff fails to recognize that the Department's ultimate burden is to prove that the reporting requirement is justified under the "circumvention or evasion" test. As established in the opening motion, there is more than a "minimum level of rationality" to justify the rule.

## CONCLUSION

For these reasons, the Department respectfully requests that this Court deny plaintiff's motion for summary judgment and grant the Department's cross-motion for summary judgment.

          Respectfully Submitted,

          PETER D. KEISLER
          Assistant Attorney General

          JEFFREY A. TAYLOR
          United States Attorney

          /s/ Helen H. Hong
          RICHARD G. LEPLEY
          HELEN H. HONG
          Department of Justice
          Civil Division, Federal Programs Branch
          20 Massachusetts Ave., NW
          Washington, D.C. 20530
          (202)514-5838
          *Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

      I hereby certify that on March 23, 2007, a true and correct copy of the foregoing Reply in Support of Defendant's Cross-Motion for Summary Judgment was served electronically through the U.S. District Court for the District of Columbia Electronic Document Filing System (ECF) and that the document is available on the ECF system.

                                              /s/ Helen H. Hong
                                              HELEN H. HONG